[Civ. No. 17507. Third Dist. Dec. 19, 1978.]

JOHN S. SNOW, Plaintiff and Respondent, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM et al., Defendants and Appellants.

**COUNSEL**

Evelle J. Younger, Attorney General, and Stephen J. Egan, Deputy Attorney General, for Defendants and Appellants.

Loren E. McMasters and Gary P. Reynolds for Plaintiff and Respondent.

**OPINION**

**PARAS, J.**—The Board Administration (Board) of the Public Employees' Retirement System of the State of California (PERS) appeals from a judgment of the Sacramento County Superior Court issuing a peremptory writ of mandamus in favor of plaintiff John S. Snow. The board contends that a State Board of Control award to a retired civil service employee for work performed above the class of employment to which he had been appointed may not be considered in determining the amount of his pension benefits. We agree and reverse.

I

Until his retirement on May 1, 1974, Snow was a permanent civil service employee of the Department of Water Resources. From May 1, 1970 to March 1, 1974, he was classified as an assistant land agent. He contends however that during that period he was actually performing the duties of associate land agent, a higher classification. On or about June 26, 1974, he filed a claim with the State Board of Control, seeking to recover $8,161 claimed by him to be the difference in salary between assistant land agent and associate land agent for the time involved. On June 3, 1975, the Board of Control heard and approved his claim for $7,785. The award, payable from the Water Resources revolving fund, was approved by the Legislature and paid in April 1976.

In November 1975 Snow applied to PERS to recompute his final compensation and adjust his retirement allowance to include the award as compensation, pursuant to Government Code section 20022. PERS denied the request and Snow requested a hearing. Although the hearing officer proposed that the claim be granted, the Board determined to decide the matter itself on the record, and on May 11, 1977, denied the claim. Snow then filed a petition for writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. This appeal was taken from the ensuing peremptory writ.

## II

The amount of pension benefits a retired civil service employee is entitled to receive is based upon his age at retirement, his years of service, and his final compensation. (Gov. Code, § 21251.13.) "Final compensation" means ". . . the highest average annual compensation earnable by a member during the three consecutive years of employment immediately preceding the effective date of his retirement or the date of his last separation from state service if earlier or during any other period of three consecutive years during his membership in the system which he designates . . . ." (Gov. Code, § 20024.01.) "Compensation earnable" means ". . . the average monthly compensation as determined by the board upon the basis of the average time put in by members in the same group or class of employment and at the same rate of pay." (Gov. Code, § 20023.) At the time of Snow's retirement, "compensation" was defined as ". . . the remuneration paid in cash out of funds controlled by the State, the university or contracting agency, plus the monetary value, as determined by the board of living quarters, board, lodging, fuel, laundry and other advantages of any nature furnished a member by his employer in payment for his services . . . ." (Gov. Code, § 20022.[1])

Snow contends that the award of the Board of Control represents payment for services he rendered and thus is compensation within the meaning of the Government Code. It follows, he argues, that in computing the amount of his pension benefits, PERS must take into consideration the amount of the award. He asserts that he was entitled to the award because "A person shall not be assigned to perform the duties of any class other than that to which his position is allocated." (Gov. Code, § 19255.)

---

[1]Government Code section 20022 has been amended since the effective date of Snow's retirement; the amendments are not pertinent herein.

Based upon the above cited statutes Snow's argument might on first impression appear logical. Upon careful analysis however its logic becomes illusory.

The Constitution of California requires that except in certain exempt positions employment by the state must be through civil service under a general system based upon merit, ascertained by competitive examination. (Cal. Const., art. VII, § 1.) The State Personnel Board is a constitutionally established agency with the duty of enforcing the civil service statutes. (Cal. Const., art. VII, § 3.) It is the duty of the Personnel Board to create and adjust classes of positions within the civil service system (Gov. Code, §§ 18702, 18800), to establish and adjust the salary to be paid state employees (Gov. Code, §§ 18850-18852), to establish and maintain employment lists for state positions (Gov. Code, § 18900 et seq.), and to establish and maintain promotion lists (Gov. Code, § 18950 et seq.). Snow makes no contention that during the disputed period he ever took part in a competitive examination for or was appointed to the position of associate land agent. In his claim before the Board of Control he alleged that "[d]uring this four-year period [he] and his supervisors repeatedly requested that [he] be permanently classified as an Associate Land Agent," but that no examination was scheduled which would have enabled him to be so appointed; despite the fact that his request for promotion was repeatedly denied, he continued to perform the duties of the higher classification.

In all cases not excepted or exempted by the Constitution, appointment must be in strict accordance with civil service rules, and not otherwise. (Gov. Code, § 19050.) Attempts by individuals and agencies to circumvent the civil service hiring rules have been repeatedly struck down. (*Pinion v. State Personnel Board* (1938) 29 Cal.App.2d 314, 315-320 [84 P.2d 185]; *Otto v. Reardon* (1937) 21 Cal.App.2d 260, 264 [69 P.2d 185]; see also *San Francisco City etc. Employees Internat. Union v. City and County of San Francisco* (1975) 49 Cal.App.3d 272, 277-278 [122 Cal.Rptr. 293], *Los Angeles Fire & Police Protective League v. City of Los Angeles* (1972) 23 Cal.App.3d 67, 77 [99 Cal.Rptr. 908], *Ticknor v. City of Sacramento* (1947) 80 Cal.App.2d 284, 289 [181 P.2d 893], *Campbell v. Board of Civil Service Comrs.* (1946) 76 Cal.App.2d 399, 404 [173 P.2d 58], and *Heard v. Board of Administration etc.* (1940) 39 Cal.App.2d 685, 695 [104 P.2d 47].) ■ The California Supreme Court has recognized that the only position an employee may lawfully hold is that for which he has been examined and to which he has been certified and appointed in the manner provided by law. (*Ferdig v. State Personnel Bd.* (1969) 71 Cal.2d

96, 108 [77 Cal.Rptr. 224, 453 P.2d 728].) Under the rule so established, the mere assumption and performance of the duties of a higher classification cannot require that the employee be appointed to it. "If the appointing power could, by assigning duties . . . to a higher class than that of the employee's original position, give to an employee a permanent civil service status, the entire fabric of the civil service system would fail. Promotion and appointments in civil service would then no longer be made 'exclusive under a general system based upon merit, efficiency and fitness as ascertained by competitive examination.' " (*Pinion* v. *State Personnel Board, supra,* 29 Cal.App.2d at p. 319.)

█ Snow concedes that during the period in question he never took a competitive examination for the position of associate land agent, and that the Department of Water Resources and the State Personnel Board did not certify him to that position. In fact, the Department of Water Resources repeatedly refused to initiate the procedure to secure that status for him. It is manifest therefore that the highest position he could legally hold during the time in question was that of assistant land agent. Snow's assumption, with the concurrence of his supervisors, of the duties of an associate land agent did not *entitle* him to the higher classification.

█ We do not accept the argument that Snow was entitled to associate land agent status under Government Code section 19257. That section provides: "Any person acting in good faith in accepting an appointment or employment contrary to this part or the rules prescribed hereunder, shall be paid by the appointing power the compensation promised by or on behalf of the appointing power or, in case no compensation is so promised, then, the actual value of any service rendered and the expense incurred in good faith under such attempted appointment or employment, and has a cause of action against the appointing power therefor." Here .there was no acceptance of an appointment to the higher position, and Snow was fully aware that his requests therefor had repeatedly been rejected. There was neither a good faith belief of an appointment by Snow nor an attempted appointment, thus section 19257 has no application. █ Snow and his supervisors cannot be allowed to circumvent the constitutional and statutory hiring scheme by the mere assumption by Snow of the duties of a position to which all were aware he had not been appointed.

Despite Snow's failure to receive an appointment in compliance with the civil service rules and regulations, he sought and received a monetary award from the Board of Control. The latter is an administrative board.

(Gov. Code, § 13901.) "[I]t has the power to make rules and regulations (Gov. Code, § 13920) which have the effect of law [citation omitted], the purpose of which is 'to establish an orderly procedure by which the Legislature would be advised of claims against the State in instances where no provision had been made for their payment' [citation omitted]; . . . it has specified duties with respect to the audit of claims . . . (Gov. Code, § 13912). It is in short an administrative board exercising quasi-judicial powers." (*Chas. L. Harney, Inc.* v. *State of California* (1963) 217 Cal.App.2d 77, 96-97 [31 Cal.Rptr. 524].) ■ Nowhere in the statutory or decisional law of this state is the Board of Control granted authority over civil service appointments. It is without authority to enforce or effectuate the rules and regulations of the civil service system, and as hereinafter noted, did not undertake to do so. As we have noted, such authority and duty is vested in the State Personnel Board. Since the Personnel Board failed or refused to classify Snow as an associate land agent, he was not entitled to that status for the purpose in question.

■ We note further that the Board of Control has been granted no authority over PERS. That authority is placed in the defendant Board. The award of the former cannot be held to have a binding effect on the latter.

Nor did the Board of Control undertake to determine or purport to interfere with Snow's employment status. Its subject matter was money only, not classification. ■ ■■■ The propriety of its award is not before us. It has no res judicata effect.[2] ■ We hold that the award is not "compensation earnable" by Snow. As we have noted, Snow was entitled to the position of assistant land agent and not that of associate land agent. The compensation earnable by him therefore must be computed on the basis of "the average time put in" by assistant land agents and at the assistant land agent rate of pay. (Gov. Code, § 20023.) The board correctly refused to consider the award of the Board of Control in computing Snow's retirement benefits.

---

[2]In a supplemental brief, Snow argues strenuously in support of collateral estoppel and res judicata. We are unpersuaded, first because res judicata requires the prior ruling to have been made by "a court of competent jurisdiction" (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892]), and the Board of Control neither is a court nor had jurisdiction (see *Bank of America* v. *City of Long Beach* (1975) 50 Cal.App.3d 882, 890 [124 Cal.Rptr. 256]; Cal. Administrative Agency Practice (Cont.Ed. Bar 1970) Collateral Estoppel, § 1.42, p. 36); second because even " '[w]here a *question of law* essential to the judgment is actually litigated and determined by a valid and final personal judgment, the determination is not conclusive between the parties in a subsequent action on a different cause of action, except where both causes of action arose out of the same

The judgment is reversed. The matter is remanded to the trial court with directions to vacate its peremptory writ and to enter a judgment denying Snow's petition for a writ of mandamus.

Puglia, P. J., concurred.

**KARLTON, J.**\*—I respectfully dissent. Although the majority asserts its reasoning is based upon the necessity of protecting the civil service system I believe its ruling will have a substantial adverse effect on the system. It must be kept in mind that this case arose from an employment situation. Plaintiff did not wake up one day and decide to do the work of an associate land agent. He was ordered to do so by his employer. Failure to obey an order brings the risk of discipline. It is all very well that an employee's disobedience of an illegal order does not constitute a legally punishable offense (*Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260 [57 Cal.Rptr. 623, 425 P.2d 223]), most folks do not have that kind of intestinal fortitude, nor should the system's proper operation depend on bureaucrats having more courage than the population at large.

The effect of the majority's ruling is to permit an immediate supervisor to order an employee to do work out of class, followed by his superior's refusal to even seek reclassification and failure to insure the employee's return to work within his class. While undoubtedly such a procedure saves the state vast sums of money, it totally perverts the civil service system.[1]

Moreover, we do not deal with a question of civil service classification at all, we deal with compensation for labor actually done and done at the employer's request. It has been the law of California since at least 1942, that pensions are not dependent upon the happenstance of a particular civil service classification (*McKeag* v. *Board of Pension Commrs.* (1942) 21 Cal.2d 386 [132 P.2d 198], and see particularly p. 391 et seq). That is we

---

subject matter or transaction; *and in any event it is not conclusive if injustice would result.'* " (Italics in original.) *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 757 [22 Cal.Rptr. 14, 371 P.2d 758]; see also *City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 230 [123 Cal.Rptr. 1, 537 P.2d 1250], *Cochran* v. *Union Lumber Co.* (1972) 26 Cal.App.3d 423, 427 [102 Cal.Rptr. 632] and Rest., Judgments, § 70, pp. 318-319.)

\*Assigned by the Chairperson of the Judicial Council.

[1]Indeed an examination of the record clearly suggests that the department failed to require the plaintiff be limited to work within his class because they needed the job done, and failed to seek reclassification because of budgetary constraints.

deal here with a claim for dollars against the state. The majority is correct in observing that the State Board of Control has no power over civil service appointments, however, that is not the issue, the issue here is the board's acknowledged power over claims for compensation. (Gov. Code, § 905.2.)

Again, as the majority notes the Board of Control has no power over retirements, that power is vested in PERS. Again, however, that is not the issue. The issue is whether the employee worked and was not fully compensated for his labor. It has long been recognized in this state ". . . that retirement benefits are not gratuities but represent deferred compensation for past service . . . ." (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 793 [148 Cal.Rptr. 9, 582 P.2d 96] (dis. opn. of Clark, J.) PERS may, of course, pursuant to its power over pensions require the employee to pay in amounts to adjust his account (Gov. Code, §§ 20165, 20180), but that too is an entirely different matter.

As the majority points out Government Code section 20022 at the time in question defined compensation as "the remuneration paid in cash out of funds controlled by the [state] . . . and *other advantages of any nature* furnished a member by his employer in payment for his services . . . ." (Italics added.) That definition exactly conforms to the award made by the Board of Control as to the issue of salary and the pension follows as a tail follows a puppy. In essence the majority's opinion asserts the Board of Control's award was in error. Though I disagree, even assuming arguendo it was in error, that case is not before us. The board made its decision and the state chose not to appeal. Ordinary rules pertaining to the res judicata and collateral estoppel effect of final decisions of administrative agencies having quasi-judicial jurisdiction over the subject matter preclude relitigation of the issue. (*Gale* v. *State Board of Equalization* (1968) 264 Cal.App.2d 689 [70 Cal.Rptr. 469].)

I believe that for the reasons stated the judgment of the trial court should be sustained. I also believe that even if the result required under these facts were not clear reversal is not warranted. Pension legislation in this state has always been construed liberally in favor of the employee or applicant in order to effectuate the beneficial purpose of the law. (See 38 Cal.Jur.2d, Pensions, § 6, p. 316 and the cases collected therein.) At best the majority can only argue that the legislation does not clearly cover this case, if they are right the ambiguity should be resolved in plaintiff's favor.

Today we sustain the state's depriving a man of a portion of the pension which an appropriate state agency determined he had labored for and earned. I believe neither the law nor sound policy requires this result and that the determination of the trial judge should be sustained.

Respondent's petition for a hearing by the Supreme Court was denied February 14, 1979. Bird, C. J., did not participate therein.